

**U.S. Department of Justice**

*United States Attorney*
*District of Connecticut*

*Connecticut Financial Center*
*157 Church Street, 25th Floor*
*New Haven, Connecticut 06510*

*(203)821-3700*
*Fax (203) 773-5376*
*www.justice.gov/usao/ct*

**February 3, 2023**

United States District Court
District of Connecticut
FILED AT HARTFORD
Feb. 3 20 2023
Dinah Milton Kinney, Clerk
By [signature]
Deputy Clerk

Timothy C. Moynahan, Esq.
The Moynahan Law Firm, LLC
255 Bank Street, Suite 2-A
Waterbury, CT 06722

Re: United States v. Dennis Dellaghelfa
Case No. 3:23cr6 (AWT)

Dear Attorney Moynahan:

This letter confirms the plea agreement between your client, Dennis Dellaghelfa (the "defendant"), and the United States Attorney's Office for the District of Connecticut (the "Government") in this criminal matter.

**THE PLEA AND OFFENSE**

In consideration for the benefits offered under this agreement, the defendant agrees to waive his right to be indicted and to plead guilty to a one-count information charging a violation of 18 U.S.C. § 1347 (Health Care Fraud).

The defendant understands that to be guilty of a violation of 18 U.S.C. § 1347, the following essential elements must be satisfied:

1. There was a scheme or artifice to defraud or to obtain money or property by means of materially false or fraudulent pretenses, representations or promises in connection with the delivery of or payment for health care benefits, items, or services;
2. The defendant knowingly and willfully executed or attempted to execute that scheme or artifice with the intent to defraud; and
3. The target of the scheme was a health care benefit program, as defined in 18 U.S.C. § 24(b).

**THE PENALTIES**

Imprisonment

This offense carries a maximum penalty of 10 years of imprisonment.

Supervised Release

In addition, for each offense, the Court may impose a term of supervised release of not more than three years to begin after any term of imprisonment. 18 U.S.C. § 3583.

The defendant understands that, should he violate any condition of supervised release, he may be required to serve a further term of imprisonment of up to 2 years per revocation pursuant to 18 U.S.C. § 3583 with no credit for time already spent on supervised release.

Fine

A violation of 18 U.S.C. §1347 carries a maximum fine of $250,000. The defendant is also subject to the alternative fine provision of 18 U.S.C. § 3571. Under this section, the maximum fine that may be imposed on the defendant is the greatest of the following amounts: (1) twice the gross gain to the defendant resulting from the offense; (2) twice the gross loss resulting from the offense; or (3) $250,000.

Special Assessment

In addition, the defendant is obligated by 18 U.S.C. § 3013 to pay a special assessment of $100 on each count of conviction. The defendant agrees to pay the special assessment to the Clerk of the Court on the day the guilty plea is accepted.

Restitution

In addition to the other penalties provided by law, the Court must also order that the defendant make restitution under 18 U.S.C. § 3663A, and the Government reserves its right to seek restitution on behalf of victims consistent with the provisions of § 3663A. The scope and effect of the order of restitution are set forth in the attached Rider Concerning Restitution. Restitution is payable immediately unless otherwise ordered by the Court. In any case in which the United States is a victim, the district court will ensure that all other victims receive full restitution before the United States receives any restitution. 18 U.S.C. § 3664(i).

Regardless of restitution that may be ordered by the Court noted above, the defendant agrees to make restitution in the amount of $6,141,857 to the Connecticut Medicaid program.

Interest, penalties and fines

Unless otherwise ordered, should the Court impose a fine or restitution of more than $2,500 as part of the sentence, interest will be charged on the unpaid balance of the fine or

restitution not paid within 15 days after the judgment date. 18 U.S.C. § 3612(f). Other penalties and fines may be assessed on the unpaid balance of a fine or restitution pursuant to 18 U.S.C. § 3572(h), (i) and § 3612(g).

Forfeiture

Pursuant to 18 U.S.C. § 982(a)(7), and based on his commission of the illegal acts of health care fraud, in violation of 18 U.S.C. § 1347, and as charged in Count One of the Information, the defendant agrees to forfeit all interests in each of the following assets (together the "forfeitable assets"):

1. The contents of Raymond James Financial Inc account 648HT342 held in the name of Dennis Dellaghelfa SEP IRA totaling $262,631.95;

2. The contents of Webster Bank account ending 0566 held in the name of Dennis P. Dellaghelfa, Jr. totaling $5,157.39;

3. The contents of Webster Bank account ending 9700 held in the name of Dennis P. Dellaghelfa, Jr. totaling $8,345.66;

4. The contents of Webster Bank account ending 4349 held in the name of General Hearing Inc. Payroll Account totaling $4,354.75;

5. The contents of Webster Bank account ending 4369 held in the name of General Hearing, Inc. Savings Account totaling $30,907.88; and

6. The contents of Webster Bank account ending 4350 held in the name of General Hearing Inc. Operating Account totaling $21,277.77.

The defendant acknowledges that the forfeitable assets described above are forfeitable as property that represents the proceeds traceable to health care fraud, in violation of 18 U.S.C. § 1347, as charged in Count One of the Information.

The defendant agrees to waive all interests in the forfeitable assets in any administrative or judicial forfeiture proceeding, whether criminal or civil, state or federal. The defendant agrees to consent to the entry of an order of forfeiture for the forfeitable assets and waives the requirements of Federal Rules of Criminal Procedure 32.2 and 43(a) regarding notice of the forfeiture in the charging instrument, announcement of the forfeiture at sentencing, and incorporation of the forfeiture in the judgment. The defendant acknowledges that he understands that the forfeiture of assets is part of the sentence that may be imposed in this case and waives any failure by the Court to advise him of this, pursuant to Federal Rule of Criminal Procedure 11(b)(1)(J), at the time his guilty plea is accepted.

The defendant agrees to hold the United States, its agents and employees harmless from any claims whatsoever in connection with the seizure or forfeiture of the above-listed assets

covered by this agreement. The defendant further agrees to waive all constitutional and statutory challenges in any manner (including direct appeal, habeas corpus, or any other means) to any forfeiture carried out in accordance with this plea agreement on any grounds, including that the forfeiture constitutes an excessive fine or punishment. The defendant also understands and agrees that by virtue of his plea of guilty he waives any rights or cause of action to claim that he is a "substantially prevailing party" for the purpose of recovery of attorney fees and other litigation costs in any related forfeiture proceeding pursuant to 28 U.S.C. § 2465(b)(1).

## THE SENTENCING GUIDELINES

### Applicability

The defendant understands that the Court is required to consider any applicable Sentencing Guidelines as well as other factors enumerated in 18 U.S.C. § 3553(a) to tailor an appropriate sentence in this case and is not bound by this plea agreement. The defendant agrees that the Sentencing Guideline determinations will be made by the Court, by a preponderance of the evidence, based upon input from the defendant, the Government, and the United States Probation Office. The defendant further understands that he has no right to withdraw his guilty plea if his sentence or the Guideline application is other than he anticipated, including if the sentence is outside any of the ranges set forth in this agreement.

### Acceptance of Responsibility

At this time, the Government agrees to recommend that the Court reduce by two levels the defendant's adjusted offense level under § 3E1.1(a) of the Sentencing Guidelines, based on the defendant's prompt recognition and affirmative acceptance of personal responsibility for the offense. Moreover, should the defendant qualify for a decrease under § 3E1.1(a) and his offense level determined prior to the operation of subsection (a) is level 16 or greater, the Government will file a motion with the Court pursuant to § 3E1.1(b) which recommends that the Court reduce the defendant's Adjusted Offense Level by one additional level based on his prompt notification of his intention to enter a plea of guilty. The defendant understands that the Court is not obligated to accept the Government's recommendations on the reductions.

The above-listed recommendations are conditioned upon the defendant's affirmative demonstration of acceptance of responsibility, by (1) truthfully admitting the conduct comprising the offense(s) of conviction and truthfully admitting or not falsely denying any additional relevant conduct for which the defendant is accountable under § 1B1.3 of the Sentencing Guidelines, and (2) disclosing to the United States Attorney's Office and the United States Probation Office a complete and truthful financial statement detailing the defendant's financial condition. The defendant expressly authorizes the United States Attorney's Office to obtain a credit report concerning the defendant.

In addition, the Government expressly reserves the right to seek denial of the adjustment for acceptance of responsibility if the defendant engages in any acts, unknown to the Government at the time of the signing of this agreement, which (1) indicate that the defendant has not terminated or withdrawn from criminal conduct or associations (§ 3E1.1 of the

Sentencing Guidelines); (2) could provide a basis for an adjustment for obstructing or impeding the administration of justice (§ 3C1.1 of the Sentencing Guidelines); or (3) constitute a violation of any condition of release. Moreover, the Government reserves the right to seek denial of the adjustment for acceptance of responsibility if the defendant seeks to withdraw his guilty plea or takes a position at sentencing, or otherwise, which, in the Government's assessment, is inconsistent with affirmative acceptance of personal responsibility. The defendant understands that he may not withdraw his plea of guilty if, for the reasons explained above, the Government does not make one or both of the recommendations or seeks denial of the adjustment for acceptance of responsibility.

Stipulation

Pursuant to § 6B1.4 of the Sentencing Guidelines, the defendant and the Government have entered into the attached stipulation, which is a part of this plea agreement. The defendant understands that this stipulation does not set forth all of the relevant conduct and characteristics that may be considered by the Court for purposes of sentencing. The defendant understands that this stipulation is not binding on the Court. The defendant also understands that the Government and the United States Probation Office are obligated to advise the Court of any additional relevant facts that subsequently come to their attention.

Guideline Stipulation

The parties agree as follows:

The Guidelines Manual in effect on the date of sentencing is used to determine the applicable Guidelines range.

The defendant's base offense level under U.S.S.G. § 2B1.1 is 6. Pursuant to U.S.S.G. § 2B1.1(b)(1)(J), that level is increased by 18 because the aggregate of the health care fraud loss attributable to the defendant is more than $3,500,000 but less than $9,500,000. Two levels are added under U.S.S.G. § 2B1.1(b)(7) because the defendant was convicted of a federal health care offense involving a government health care program and the loss was more than $1,000,000 but less than $7,000,000. Two levels are added under U.S.S.G. § 3B1.3 because the defendant abused a position of trust in a manner that significantly facilitated the commission of the offense. Thus, the offense level before adjustment for acceptance of responsibility, is 28. Three levels are subtracted under U.S.S.G. § 3E1.1 for acceptance of responsibility, as noted above, resulting in a total offense level of 25.

Based on an initial assessment, the parties agree that the defendant falls within Criminal History Category I. The parties reserve the right to recalculate the defendant's Criminal History Category and corresponding sentencing ranges if this initial assessment proves inaccurate.

A total offense level 25, assuming a Criminal History Category I, would result in a range of 57 to 71 months of imprisonment (sentencing table) and a fine range of $20,000 to $200,000 (U.S.S.G. § 5E1.2(c)(3)). The defendant is also subject to a supervised release term of one to three years. U.S.S.G. § 5D1.2.

The Government and the defendant reserve their rights to seek a departure or a non-Guidelines sentence, and both sides reserve their right to object to a departure or a non-Guidelines sentence.

The defendant understands that the Court is not bound by this agreement on the Guideline ranges specified above. The defendant further understands that he will not be permitted to withdraw the guilty plea if the Court imposes a sentence outside any of the ranges set forth in this agreement.

In the event the United States Probation Office or the Court contemplates any sentencing calculations different from those stipulated by the parties, the parties reserve the right to respond to any inquiries and make appropriate legal arguments regarding the proposed alternate calculations. Moreover, the parties reserve the right to defend any sentencing determination, even if it differs from that stipulated by the parties, in any post-sentencing proceeding.

Information to the Court

The Government reserves its right to address the Court with respect to an appropriate sentence to be imposed in this case. Moreover, the Government will discuss the facts of this case, including information regarding the defendant's background and character, 18 U.S.C. § 3661, with the United States Probation Office and will provide the Probation Officer with access to material in its file, with the exception of grand jury material.

**WAIVER OF RIGHTS**

The defendant acknowledges and agrees that he is knowingly, intelligently, and voluntarily waiving the following rights:

Waiver of Right to Indictment

The defendant understands that he has the right to have the facts of this case presented to a federal grand jury, consisting of between sixteen and twenty-three citizens, twelve of whom would have to find probable cause to believe that he committed the offense set forth in the information before an indictment could be returned. The defendant acknowledges that he is waiving his right to be indicted.

Waiver of Trial Rights and Consequences of Guilty Plea

The defendant understands that he has the right to be represented by an attorney at every stage of the proceeding and, if necessary, one will be appointed to represent him.

The defendant understands that he has the right to plead not guilty or to persist in that plea if it has already been made, the right to a public trial, the right to be tried by a jury with the assistance of counsel, the right to confront and cross-examine the witnesses against him, the right not to be compelled to incriminate himself, the right to testify and present evidence, and the right

to compel the attendance of witnesses to testify in his defense. The defendant understands that by pleading guilty he waives those rights and that, if the plea of guilty is accepted by the Court, there will not be a further trial of any kind.

The defendant understands that, if he pleads guilty, the Court may ask him questions about each offense to which he pleads guilty, and if he answers those questions falsely under oath, on the record, and in the presence of counsel, his answers may later be used against him in a prosecution for perjury or making false statements.

Discovery

The defendant hereby acknowledges that he has accepted this Agreement and decided to plead guilty because he is in fact guilty. The defendant acknowledges that the Government may not have yet produced any or all discovery material. By entering this plea of guilty, the defendant waives the right to receive any additional discovery, including but not limited to discovery under the Jencks Act, the Federal Rules of Criminal Procedure, *Brady v. Maryland*, 373 U.S. 83 (1963), and *Giglio v. United States*, 405 U.S. 150 (1972). The defendant waives any and all right to withdraw his plea or attack his conviction, either on direct appeal or collaterally, on the ground that the Government has not produced any discovery material other than what has already been produced as of the date of the signing of this agreement.

Waiver of Statute of Limitations

The defendant agrees that, should the convictions following defendant's guilty plea be vacated for any reason, then any prosecution that is not time-barred by the applicable statute of limitations on the date of the signing of this plea agreement (including any indictment or counts the Government has agreed to dismiss at sentencing pursuant to this plea agreement) may be commenced or reinstated against the defendant, notwithstanding the expiration of the statute of limitations between the signing of this plea agreement and the commencement or reinstatement of such prosecution. The defendant agrees to waive all defenses based on the statute of limitations with respect to any prosecution that is not time-barred on the date the plea agreement is signed.

Waiver of Right to Challenge Conviction

The defendant acknowledges that under certain circumstances he is entitled to challenge his conviction. By pleading guilty, the defendant waives his right to appeal or collaterally attack his conviction in any proceeding, including but not limited to a motion under 28 U.S.C. § 2255 and/or § 2241. In addition to any other claims he might raise, the defendant waives his right to challenge his conviction based on (1) any non-jurisdictional defects in the proceedings before entry of this plea, (2) a claim that the statute(s) to which the defendant is pleading guilty is unconstitutional, and (3) a claim that the admitted conduct does not fall within the scope of the statute. This waiver does not preclude the defendant from raising a claim of ineffective assistance of counsel in an appropriate forum.

Waiver of Right to Appeal or Collaterally Attack Sentence

The defendant acknowledges that under certain circumstances, he is entitled to challenge his sentence. In consideration for the benefits offered under this agreement, the defendant agrees not to appeal or collaterally attack the sentence in any proceeding, including but not limited to a motion under 28 U.S.C. § 2255 and/or § 2241, if that sentence does not exceed 71 months of imprisonment, a 3-year term of supervised release, a $100 special assessment, a $200,000 fine, and $6,141,857 in restitution even if the Court imposes such a sentence based on an analysis different from that specified above. The Government and the defendant agree that this waiver applies regardless of whether the term of imprisonment is imposed to run consecutively to or concurrently with, in whole or in part, the undischarged portion of any other sentence that has been imposed on the defendant at the time of sentencing in this case. Furthermore, the parties agree that any challenge to the defendant's sentence that is not foreclosed by this provision will be limited to that portion of the sentencing calculation that is inconsistent with (or not addressed by) this waiver. This waiver does not preclude the defendant from raising a claim of ineffective assistance of counsel in an appropriate forum.

Waiver of Challenge to Plea Based on Immigration Consequences

The defendant understands that pleading guilty may have consequences with respect to his immigration status if he is not a citizen of the United States. Under federal law, non-citizens are subject to removal for a broad range of crimes, including the offense(s) to which the defendant is pleading guilty. Indeed, because the defendant is pleading guilty to health care fraud, removal is presumptively mandatory. Likewise, if the defendant is a naturalized citizen of the United States, pleading guilty may result in denaturalization and removal. Removal, denaturalization, and other immigration consequences are the subject of a separate proceeding, however, and the defendant understands that no one, including his attorney or the district court, can predict to a certainty the effect of his conviction on his immigration status. The defendant nevertheless affirms that he wants to plead guilty regardless of any immigration consequences that his plea may entail, even if the consequence is automatic removal from the United States.

The defendant understands that he is bound by his guilty plea regardless of the immigration consequences of the plea. Accordingly, the defendant waives any and all challenges to his guilty plea and to his sentence based on those consequences, and agrees not to seek to withdraw his guilty plea, or to file a direct appeal or any kind of collateral attack challenging his guilty plea, conviction or sentence, based on the immigration consequences of his guilty plea, conviction or sentence. This waiver does not preclude the defendant from raising a claim of ineffective assistance of counsel in the appropriate forum.

**ACKNOWLEDGMENT OF GUILT AND VOLUNTARINESS OF PLEA**

The defendant acknowledges that he is entering into this agreement and is pleading guilty freely and voluntarily because he is guilty. The defendant further acknowledges that he is entering into this agreement without reliance upon any discussions between the Government and him (other than those described in the plea agreement letter), without promise of benefit of any kind (other than the concessions contained in the plea agreement letter), and without threats,

force, intimidation, or coercion of any kind. The defendant further acknowledges his understanding of the nature of the offense to which he is pleading guilty, including the penalties provided by law. The defendant also acknowledges his complete satisfaction with the representation and advice received from his undersigned attorney. The defendant and his undersigned counsel are unaware of any conflict of interest concerning counsel's representation of the defendant in the case.

**SCOPE OF THE AGREEMENT**

The defendant acknowledges that this agreement is limited to the undersigned parties and cannot bind any other federal authority, or any state or local authority. The defendant acknowledges that no representations have been made to him with respect to any civil or administrative consequences that may result from this plea of guilty because such matters are solely within the province and discretion of the specific administrative or governmental entity involved. Finally, the defendant acknowledges that this agreement has been reached without regard to any civil tax matters that may be pending or which may arise involving him.

**COLLATERAL CONSEQUENCES**

The defendant understands that he will be adjudicated guilty of each offense to which he has pleaded guilty and will be deprived of certain rights, such as the right to hold public office, to serve on a jury, to possess firearms and ammunition, and in some states, the right to vote. The defendant further understands that his guilty plea may result in his exclusion from participating in Medicaid, Medicare, and other government health care programs. Further, the defendant understands that if he is not a citizen of the United States, a plea of guilty may result in removal from the United States, denial of citizenship, and denial of admission to the United States in the future. The defendant understands that pursuant to section 203(b) of the Justice For All Act, the Federal Bureau of Prisons or the United States Probation Office will collect a DNA sample from the defendant for analysis and indexing. Finally, the defendant understands that the Government reserves the right to notify any state or federal agency by which he is licensed, or with which he does business, as well as any current or future employer of the fact of his conviction.

**SATISFACTION OF FEDERAL CRIMINAL LIABILITY; BREACH**

The defendant's guilty plea, if accepted by the Court, will satisfy the federal criminal liability of the defendant in the District of Connecticut as a result of his participation in health care fraud, which forms the basis of the information in this case.

The defendant understands that if, before sentencing, he violates any term or condition of this agreement, engages in any criminal activity, or fails to appear for sentencing, the Government may void all or part of this agreement. If the agreement is voided in whole or in part, the defendant will not be permitted to withdraw his guilty plea.

**NO OTHER PROMISES**

The defendant acknowledges that no other promises, agreements, or conditions have been entered into other than those set forth in this plea agreement, and none will be entered into unless set forth in writing, signed by all the parties.

This letter shall be presented to the Court, in open court, and filed in this case.

Very truly yours,

VANESSA ROBERTS AVERY
UNITED STATES ATTORNEY

HEATHER CHERRY
ELENA L. CORONADO
ASSISTANT UNITED STATES ATTORNEYS

The defendant certifies that he has read this plea agreement letter and its attachment(s) or has had it read or translated to him, that he has had ample time to discuss this agreement and its attachment(s) with counsel and that he fully understands and accepts its terms.

DENNIS DELLAGHELFA
The Defendant

2-3-2023
Date

I have thoroughly read, reviewed and explained this plea agreement and its attachment(s) to my client who advises me that he understands and accepts its terms.

TIMOTHY C. MOYNAHAN, ESQ.
Attorney for the Defendant

2-3-2023
Date

**STIPULATION OF OFFENSE CONDUCT**

The defendant and the Government stipulate to the following offense conduct that gives rise to the defendant's agreement to plead guilty to the information:

1. Beginning in or about 2008 and continuing through the date of this agreement, **Dennis Dellaghelfa ("Dellaghelfa")** was the owner and authorized representative of General Hearing, a Waterbury, Connecticut-based hearing aid dealer.

2. Beginning in or about 2005 and continuing through the date of this agreement, **Dellaghelfa** was a licensed hearing instrument specialist in the state of Connecticut.

3. The Connecticut Department of Social Services provided medical assistance to low-income persons through the Connecticut Medical Assistance Program (CTMAP). CTMAP's benefit packages, referred to as "HUSKY" or "Connecticut Medicaid," were jointly funded by the State of Connecticut and the federal government. Participating health care providers submitted claims for reimbursement for medically necessary benefits, items, and services rendered to Connecticut Medicaid members. As such, this program was a "health care benefit program" under 18 U.S.C. § 24(b).

4. Beginning in or about February 2013 and continuing through the date of this agreement, General Hearing was a participating provider enrolled in CTMAP.

5. In or about March, 2013, **Dellaghelfa,** on behalf of General Hearing, electronically signed a CTMAP provider enrollment agreement, which contained the following language:

> Provider acknowledges and understands that the prohibitions set forth in state and federal law include, but are not limited to, the following:
> a. false statements, claims, misrepresentations, concealment, failure to disclose and conversion of benefits;
> b. any giving or seeking of kickbacks, rebates, or similar remuneration;
> c. charging or receiving reimbursement in excess of that provided by the State; and
> d. false statement or misrepresentation in order to qualify as a provider.

6. To remain a participating health care provider, in or about March 2015, February 2017, January 2019, and March 2021, **Dellaghelfa**, on behalf of General Hearing, electronically signed additional CTMAP provider enrollment agreements, which included the language quoted in paragraph 5 above.

7. Beginning in at least June 2016 and ending in or about April 2022, **Dellaghelfa**, knowingly, willfully, and with the specific intent to defraud, executed a scheme and artifice to defraud Connecticut Medicaid and to obtain money or property owned by and under the custody and control of Connecticut Medicaid by means of materially false and fraudulent pretenses, representations, and promises, in connection with the delivery of and payment for health care benefits, items, and services. The purpose of **Dellaghelfa's** scheme and artifice was to enrich himself by submitting false and fraudulent claims to Connecticut Medicaid.

8. From approximately June 2016 to April 2022, **Dellaghelfa** submitted, or caused to be submitted, false and fraudulent claims for payment for services and equipment that were not provided or were medically unnecessary, knowing that at the time the claims were made that they were false and fraudulent.

a. For example, in or about November 2018, **Dellaghelfa** knowingly and willfully submitted materially false and fraudulent claims to Connecticut Medicaid for services provided to six patients on or about November 14 and 15, 2018. **Dellaghelfa**, however did not provide those services, as he was traveling outside the United States on those dates. **Dellaghelfa** also knew that nobody employed by General Hearing provided those services.

b. For example, on or about October 31, 2021, **Dellaghelfa** knowingly and willfully submitted a materially false and fraudulent claim to Connecticut Medicaid for services provided to an individual with initials D.G., including dispensing hearing aids. Connecticut Medicaid reimbursed **Dellaghelfa** approximately $1,209 for these services. **Dellaghelfa** knew that D.G. did not need hearing aids and paid D.G. approximately $800 for the visit. In addition, in or about December 2021, **Dellaghelfa** paid D.G. approximately $300 for a patient "referral."

9. From approximately January 2019 through December 2020, **Dellaghelfa** submitted claims for services that were purportedly provided by his three employees. However, **Dellaghelfa** knew that the employees: (i) performed hearing tests without the required professional permit; and (ii) submitted paperwork for hearing tests and services that did not occur or were not medically necessary.

10. From approximately July 2016 to April 2022, **Dellaghelfa** also fraudulently grew the General Hearing business by paying remuneration to third-party "patient recruiters." **Dellaghelfa** paid recruiters for each Medicaid patient they brought to General Hearing for a hearing test, and that then failed the hearing test and received hearing aids. **Dellaghelfa** did not pay recruiters for patients that did not receive hearing aids. Dellaghelfa's actions concerning these patient recruiters were themselves fraudulent, as follows:

a. **Dellaghelfa** knew that remuneration paid to a third-party on a per-patient basis or based on services billed to Connecticut Medicaid was a violation of the CTMAP provider agreement, which he had signed.

b. **Dellaghelfa** also knew that the recruiters only paid patients when they failed the hearing tests, and that paying these patients was a violation of the CTMAP provider agreement, which he had signed.

c. **Dellaghelfa** also knowingly submitted materially false and fraudulent claims to Connecticut Medicaid for testing and hearing aids for five of the patient recruiters. **Dellaghelfa** knew that the patient recruiters did not need hearing aids.

11. Beginning in or around April 2020, in furtherance of the scheme to defraud and to conceal the illegal activity, **Dellaghelfa** and others created fraudulent letters of medical necessity for patients who had purposefully failed hearing tests and received hearing aids.

12. In total, from in or about June 2016 and ending in or about April 2022, **Dellaghelfa** knowingly and willfully submitted, or caused to be submitted, approximately $6,141,857 in fraudulent Medicaid claims for services that were: (i) fraudulently provided; (ii) not provided; or (iii) medically unnecessary.

This written stipulation is part of the plea agreement. The defendant and the Government reserve their right to present additional offense conduct and relevant conduct to the Court in connection with sentencing.

DENNIS DELLAGHELFA
The Defendant

HEATHER CHERRY
ELENA L. CORONADO
ASSISTANT U.S. ATTORNEYS

TIMOTHY C. MOYNAHAN, ESQ.
Attorney for the Defendant

**RIDER CONCERNING RESTITUTION**

The Court shall order that the defendant make restitution under 18 U.S.C. § 3663A as follows:

1. If the offense resulted in damage to or loss or destruction of property of a victim of the offense:

   A. Return the property to the owner of the property or someone designated by the owner; or

   B. If return of the property is impossible, impracticable, or inadequate, pay an amount equal to:

   The greater of -
   (I) the value of the property on the date of the damage, loss, or destruction; or

   (II) the value of the property on the date of sentencing, less the value as of the date the property is returned.

2. In the case of an offense resulting in bodily injury to a victim –

   A. Pay an amount equal to the costs of necessary medical and related professional services and devices related to physical, psychiatric, and psychological care; including non-medical care and treatment rendered in accordance with a method of healing recognized by the law of the place of treatment;

   B. Pay an amount equal to the cost of necessary physical and occupational therapy and rehabilitation; and

   C. Reimburse the victim for income lost by such victim as a result of such offense;

3. In the case of an offense resulting in bodily injury that results in the death of the victim, pay an amount equal to the cost of necessary funeral and related services; and

4. In any case, reimburse the victim for lost income and necessary child care, transportation, and other expenses incurred during participation in the investigation or prosecution of the offense or attendance at proceedings related to the offense.

The order of restitution has the effect of a civil judgment against the defendant. In addition to the Court-ordered restitution, the Court may order that the conditions of its order of restitution be made a condition of probation or supervised release. Failure to make restitution as ordered may result in a revocation of probation, 18 U.S.C. § 3565, or a modification of the conditions of supervised release, 18 U.S.C. § 3583(e). Failure to pay restitution may also result in the defendant being held in contempt, or the defendant's re-sentencing to any sentence which might originally have been imposed by the Court. *See* 18 U.S.C. §§ 3613A, 3614. The Court

may also order that the defendant give notice to any victim(s) of his offense under 18 U.S.C. § 3555.